**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LINDSAY GROSSCUP, on behalf of herself and all other persons similarly situated, | ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> )    No. 16 C 06501 |
| v. | ) <br> )    Judge John J. Tharp, Jr. |
| KPW MANAGEMENT, INC. and HERE'S WINGS, LLC | ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this case under the Fair Labor Standards Act, the named plaintiffs Lindsay Grosscup and the prospective opt-in plaintiffs (collectively, the "plaintiffs")—servers and bartenders at the defendants' franchised Buffalo Wild Wings ("BWW") restaurants in Illinois and Maryland—allege that they were unlawfully paid below-minimum, tip-credited hourly wages while (1) they performed excessive amounts of non-tipped work related to their jobs; and (2) they were required to perform duties unrelated to their jobs. They also allege that they were denied the statutory right to retain all of their tips when they were forced to pay for customer walkouts and cash shortages from their tips. The plaintiffs now move for conditional certification of a collective action and for authorization to issue step-one notice to prospective opt-in members. *See* 29 U.S.C. § 216(b). The defendants oppose the motion on the ground that the plaintiffs have not made the preliminary showing of the existence of a common unlawful policy or practice as to any of the FLSA violations they allege.

## BACKGROUND

### A.     Collective Actions

Section 16(b) of the FLSA, 29 U.S.C. § 216(b) authorizes employees to act together to seek redress for violations of the minimum wage and maximum hour provisions of 29 U.S.C. §§ 206 and 207. *Ervin v. OS Rest. Servs., Inc*., 632 F.3d 971, 974 (7th Cir. 2011); see *Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 553 (7th Cir. 2016) ("Suits under the Fair Labor Standards Act cannot proceed as class actions. Instead they are opt-in representative actions."); *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin,* 829 F.3d at 551.  Here, the plaintiffs seek to give notice to all servers and bartenders who worked at any of the defendants' BWW restaurants in Illinois or Maryland in the three years preceding the complaint of their ability to opt into the collective action. *See* Pls. Mot. ¶ 1-2, ECF No. 21; 29 U.S.C. § 216(b) (opt-in requirement).

"Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process." *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 C 3452, 2013 WL 707992, at *2 (N.D. Ill. Feb. 26, 2013); *Ballou v. iTalk, LLC*, No. 11 C 8465, 2013 WL 3944193, at *3 (N.D. Ill. July 31, 2013). First, the plaintiffs have the burden of showing that there are other similarly situated employees who are potential claimants. *Salmans*, 2013 WL 707992, at *2. The plaintiffs must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Id*.; *Bergman v. Kindred Healthcare, Inc*., 949 F. Supp. 2d 852, 855 (N.D.

Ill. 2013) ("At this stage of the proceedings, plaintiffs must make a modest factual showing of common, unlawful conduct and provide some indication of harm to employees."). Courts use a "lenient interpretation" of the term "similarly situated" in deciding whether plaintiffs meet this burden. *Salmans*, 2013 WL 707992, at *2 (quoting *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 848 (N.D. Ill. 2008). "There is a low standard of proof." *Bergman*, 949 F. Supp. 2d 852, 855 (N.D. Ill. 2013). If the plaintiffs are able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs. *Salmans*, 2013 WL 707992, at *2; *Ballou*, 2013 WL 3944193, at *3.

The second step, occurring after the opt-in and discovery process has been completed, is more stringent. Once it is known which employees will be part of the collective, the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Salmans*, 2013 WL 707992, at *2; *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011). "If the court finds insufficient similarities during the second step, it may revoke conditional certification or divide the class into subclasses." *Sylvester*, 2013 WL 5433593, at *3.

**B.      The FLSA Standards for Tipped Work**

Under the FLSA, an employer may pay a tipped employee less than minimum wage— the employer takes a so-called "tip credit"—but if the tips, in combination with the below-minimum-wage hourly rate, do not add up to the minimum wage, the employer has to make up the difference. 29 U.S.C. § 203(m); *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *2 (N.D. Ill. Sept. 8, 2016). There are two ways in which an employer can

3

violate the tip-credit provisions of the FLSA. First, if the employer fails to pay the minimum wage for *any* time spent on duties that are not "related" to an employee's occupation, there is a violation. It is also unlawful for the employer to pay the tip-credited wage to an employee who spends excessive time on non-tipped work, even if that work is "related" to the occupation. The Department of Labor has interpreted this to mean 20% or more of the employee's working hours. This Court will refer to the first kind of violation as a "dual jobs" violation and the second as an "excessive side work" (the industry term for the duties attendant to serving food and drink) violation.

The FLSA statute itself does not prescribe these two separate kinds of violations but the attendant regulation (29 C.F.R. § 531.56(e)), Chapter 30 of the Labor Department's <u>Field Operations Handbook</u> (the "FOH," *see* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf ), and countless court decisions have recognized both. The relevant regulation is the "dual jobs" provision in 29 C.F.R. § 531.56(e):

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

In other words, "the tip credit may not be taken for hours of employment worked in the occupation not subject to tips." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011). An occupation that requires the performance of duties related to the primary tip-generating

duties, however, is not solely by virtue of that fact a "dual job" and the regulation itself provides no requirement that time performing such related duties be paid at the minimum wage rate.

The Labor Department's FOH[1] interprets the dual-jobs regulation and is accepted by courts, including the Seventh Circuit, as authoritative. *See Schaefer v. Walker Bros. Enterprises, Inc.,* 829 F.3d 551, 554, 555 (7th Cir. 2016); *Driver v. Apple Illinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014). "Where the rule to be interpreted 'is a creature of the Secretary's own regulations, [however, its] interpretation of it is, under [Supreme Court] jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation.'" *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (quoting *Auer v. Robbins,* 519 U.S. 452, 461 (1997) (internal marks omitted).

The FOH adds a temporal standard on top of the dual job regulation's relatedness inquiry. It provides that the tip credit may be taken for time spent on "related duties" that are "incidental" to the regular duties of a tipped employee and generally assigned to the tipped employee—*i.e.*, "side work." FOH § 30d00(f)(2). An example is "a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses." *Id*. If, however, the related duties take a "substantial" amount of time—in excess of 20% of hours worked per week—"no tip credit may be taken for the time spent in those duties." *Id*. § 30d00(f)(3).[2] Thus

---

[1] Section 30d was revised effective December 15, 2016. References are to the 2016 revised edition, which supplants the earlier versions on which the decisions cited herein were based. *See* Chapter 30 "revision information prior to 12/15/2016, available at: https://www.dol.gov/whd/foh/#. The updated FOH clarifies but does not alter the DOL's interpretation of the dual-jobs provisions, although the relevant provisions are now found in § 30d00(f) rather than § 30d00(e). Therefore, this Court cites the current edition.

[2] The 20% standard for related side work was set forth in earlier versions of the FOH, but for a long time it was a subject of debate whether an independent FLSA violation based on excessive side work existed, because the 20% standard is not found in any statute or regulation.

5

even incidental work related to a worker's occupation must be paid at the non-tip-credited wage if it takes an excessive amount of time relative to the core functions of the occupation. Put differently, in the words of the Seventh Circuit, "[T]he Department of Labor, interpreting section 203(m), has distinguished between non-tipped work that is, and is not, 'related' to tipped work, and has decided that as long as the tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work (such as a waiter's setting or clearing a table that he waits on), the employer doesn't have to pay the full minimum wage" for time spent on that related work. *Driver*, 739 F.3d at 1075 (citing 29 C.F.R. § 531.56(e)) and FOH § 30d00(e) (2012).

Further, whenever any non-tipped duties are *unrelated* to the tipped worker's occupation, the tip credit may not be taken at all, regardless of how much time they take. *Id.* § 30d00(f)(4) ("[A]n employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation."). As an example, a server who does "maintenance work" such as "cleaning bathrooms and washing windows" is engaged in a dual job because those duties "are not related to the tipped occupation of a server." *Id.* The restaurant cannot take a tip credit—it must pay the full minimum wage—for the time a server spends on maintenance work. In *Driver*, the Seventh Circuit outlined this type of claim: "[O]f course if the tipped employees also perform non-tipped duties . . . they are entitled to the full minimum wage for the

---

The debate would seem to be resolved at this point. Courts rejected the argument that no cause of action exists for based on "substantial" related work simply because the 20% standard is a product only of the FOH's interpretation of the "dual jobs" regulation. *See, e.g., Fast,* 638 F.3d at 881; *McLamb v. High 5 Hospitality*, 197 F. Supp. 3d 656 (S.D.N.Y. 2016). The Seventh Circuit accepted the FOH's 20% standard in *Driver*, although in that case there does not appear to have been a direct challenge to the viability of that distinct theory of relief. Further, the FOH's 2016 update places the excessive (>20%) side work claim in a separate subsection, underscoring the DOL's interpretation of the dual-jobs regulation as providing a distinct theory of relief based upon tip credits taken for substantial amounts of related side work.

time they spend at that work" with the "important qualification" that the work is "unrelated to their tipped duties." *See* 739 F.3d at 1075. As examples unrelated duties for a restaurant server the Court listed, in *dicta*: "washing dishes, preparing food, mopping the floor, or cleaning bathrooms"—in other words, generally, culinary and janitorial duties. On the other hand, in *Schaefer Brothers*, the Seventh Circuit, concluded that the following tasks of the servers were related to "taking customers' orders and bringing food": washing and cutting strawberries, mushrooms, and lemons; mixing up applesauce and jams; preparing jellies, salsas and compote for use; restocking bread bins and replenishing dispensers of milk, whipped cream, syrup, and hot chocolate; restocking straws; filling ice buckets; brewing tea and coffee; and wiping down toasters and tables. 829 F.3d at 555. The Court concluded that "cleanup tasks cannot be categorically excluded" from a server's occupation. In the Court's view, the most "problematic"—that is, the most unrelated—tasks were "wiping down burners and woodwork and dusting picture frames," *Id*. at 555, but those things took only a negligible amount of time, much less than 20%.[3] Because the untipped tasks were, overwhelmingly, related, there was no "dual jobs" violation.

Finally, as relevant here, under the FLSA, tipped workers must be permitted to retain all tips for themselves (except to the extent they lawfully pool their tips), and employers may not take the tip credit unless they have informed their employees about the tip-credit provisions of the statute. 29 U.S.C. § 203(m). *Id*.

---

[3] When the non-tipped work is unrelated to the occupation, the amount of time spent on it is irrelevant; no 20% threshold applies. But this Court does not understand *Schaefer Brothers* to hold otherwise. At most, the Court allowed a *de minimis* defense, concluding that if unrelated work is so infrequent as to be "negligible" the pay rate need not be (and perhaps cannot practicably be) recalculated for inconsequential snippets of time.

### C. The Plaintiffs' Allegations

In this case, the plaintiffs allege in their complaint that the defendants violated the FLSA's tip-credit provisions as to servers and bartenders in three ways: (1) "by requiring Plaintiffs and similarly-situated servers and bartenders to perform non-tipped work that is unrelated to their tipped occupation while paying them less than minimum wage, such as: cleaning bathrooms, sweeping, vacuuming, mopping, and deck scrubbing floors, cleaning and bleaching drains, emptying and cleaning trash cans, slicing lemons, limes, and oranges, and regularly washing dishes"; (2) "by requiring Plaintiffs and similarly-situated servers and bartenders to perform non-tipped work that, even if related to their occupation, exceeded twenty (20) percent of their time worked in one or more individual workweeks without paying them full minimum wage;" and (3) "by requiring Plaintiffs and similarly situated servers and bartenders to return a portion of their tips to the restaurants, including to cover the cost of customer walkouts and cash drawer shortages."[4]

### FACTUAL BASIS OF CERTIFICATION REQUEST

To support their right to conditional certification of a collective action, the plaintiffs rely on two types of evidence: declarations from five BWW workers, including Grosscup, and the official training materials, schedules, and checklists issued by BWW, which outline the responsibilities of the bartenders and servers.

---

[4] The complaint also asserts that the defendants violated the FLSA "by taking a tip credit against the minimum wages of Plaintiffs and similarly situated servers and bartenders without informing them of the tip credit provisions of the FLSA." *See* Compl. ¶¶ 5, 15, 16, 42, 93, ECF No. 1. But only one declarant—Tarae Jackson—attests to a "belief" that she was not so informed, and the plaintiffs do not mention this violation in their briefing in favor of step-one notice and certification (although it is included the proposed notice itself). Therefore, this Court does not further discuss this claim.

The plaintiffs' five declarants[5] attest that all of their work at the defendants' restaurants was paid at the tip-credited rate, which is below the minimum wage. But they describe many required duties outside of serving customers that are not tipped work. For example, Grosscup attests that on the morning shift, her responsibilities included "filling 'sani' buckets with water and sanitizer in the back of the house and placing them at the server stations; lifting chairs from on top of tables and placing them on the floor underneath tables; putting nozzles onto the soda fountains; filling buckets with ice in the back of the house and carrying them to the front of the house to empty into ice bins; placing bus tubs at the server stations; making sure server stations are stocked with to-go boxes, paper boats, napkins, silverware, receipt paper, coasters, and to-go cups and lids; and setting up the patio, which involves carrying caddie buckets with condiments, wet naps and menus to the patio and watering the plants." The opening and closings shifts also entailed performing a specific list of cleaning, stocking, and food preparation (of garnishes, condiments, etc.—outside the kitchen) duties, and the servers and bartenders were required to do similar work in between serving customers and as part of "weekly cleaning duties."

Grosscup estimated that about half of her working hours were spent on tasks for which she could not earn a tip. The four other declarants similarly attest that their jobs as bartenders and servers in different franchise locations required them to perform the same non-tipped work that Grosscup describes. Declarants White, Jackson, Frederick, and Rojas, who were all paid at different tip-credited rates below the minimum wage, estimate the time spent on non-tipped duties (whether related or unrelated to their occupations) at 40 percent, 50 percent, 40-50 percent, and 50 percent, respectively.

---

[5] Lindsay Grosscup works as a server and bartender at a BWW in Alqonquin, Illinois. LaMarcus White was a server in Rockville, Maryland. Tarae Jackson worked in Laurel, Maryland as a server, as did Jerome Frederick. Brian Ramirez Rojas worked as a server and bartender in Skokie, Illinois.

Grosscup's declaration also states that at least three times, the defendants required her to use her tip money to cover the cost of her customers walking out without paying. Her managers also required her "several times" to reimburse the restaurant from her tip money when the cash register drawers were short of money. Jerome Frederick had a similar experience with walkout customers, and Rojas had the same experience with the cash drawer.

All of the declarants state that the conditions and requirements they describe were uniformly enforced in their franchise locations, regardless of which "resident," "transferring," or "regional" manager was in charge at a given time. The regional managers have responsibility over multiple BWW stores, and all of the managers are trained together in a central location, leading to consistent policies and practices among the stores.

BWW publishes various materials setting forth the duties of bartenders and servers working the various shifts. Some of these—for example, the "Server Opening Checklist" Pl. Ex. F, ECF No. 22-1 —set forth a specific timeline for when the "side work," or non-tipped duties, should be performed and how long they should take. At various points before, during, and after the shifts, a server's listed duties include such work as taking down chairs and arranging tables and patio furniture, stocking the cleaning stations around the restaurant, rolling silverware, taking out the garbage, refilling condiments, and (until this duty was reassigned to cashiers in May 2016) cleaning the bathrooms. The listed duties of bartenders include cleaning the restaurant's floors and deep cleaning the bar area, taking out the garbage, restocking the bar, preparing bar garnishes, getting ice, and monitoring the restrooms to "mak[e] sure they are operational." "Intensive" cleaning duties were also required of servers and bartenders on various shifts. For servers these duties included scraping gum, cleaning the walls, dusting, detailing any video game machines, and pulling weeds and watering plants on the patio. For bartenders, the

duties included all manner of cleaning tasks, such as scrubbing behind the glass chiller, cleaning soda guns and holsters with a toothbrush, and cleaning, wiping, dusting, and detailing everything from the walk-in refrigerator to the napkin holders.

In response to the plaintiffs' evidence, the defendants submit contradictory declarations from 14 BWW servers and bartenders at seven of their franchise locations. None ever worked in the kitchen. Anywhere from one declarant to six attested that, as to all the duties set forth on BWW's side-work checklists, he or she never performed certain work. For example, three attested that they had never vacuumed. Two said they had never "deck-scrubbed" the floors. Six never cleaned the walls. Seven of defendants' declarants stated that they had never been required to reimburse the restaurant from their tips for customer walkouts (and two more had never experienced customer walkouts). Two attested that servers did not maintain a cash drawer, and two attested that bartenders never had to reimburse the restaurants for cash-drawer shortages.

## DISCUSSION

### A.    The 20% Theory (Excessive Side Work)

On the plaintiffs' theory that the BWW servers and bartenders were unlawfully required to spend in excess of 20% of their work hours on (unrelated or related) non-tipped work, they have made the required "modest" showing of a common policy among the defendants' 23 franchise locations. The declarations and the BWW materials setting out the workers' duties establish enough commonality to survive the defendants' challenge to conditional certification of the collective action.

Several courts have conditionally certified collective actions and permitted notice to opt-in plaintiffs in similar FLSA cases against Buffalo Wild Wings franchises by servers and bartenders. *See, e.g.*, *Rodgers v. Abbster Enterprises, LLC*, No. 3:16-CV-106, 2017 WL 402055,

at *4 (N.D.W. Va. Jan. 30, 2017); *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 968 (S.D. Ind. 2016), on reconsideration in part, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016); *McLamb v. High 5 Hospitality*, 197 F. Supp. 3d 656 (2016); *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *9 (N.D. Ill. Sept. 8, 2016). Although these cases are not binding authority, they are persuasive in their reasoning.

Judge Dow's reasoning in *Soto* is especially persuasive, because there the plaintiffs' motion was supported by six declarations attesting to facts very similar to those set forth by the declarants in this case. In rejecting the defendants' argument that there was no common policy at issue, he concluded: "To the extent that Defendants argue that Plaintiffs failed to identify a 'common policy,' the declarations of the six server/bartenders evince a consistent practice in all four franchise locations where servers and bartenders regularly perform non-tipped duties. The exact percentage of time that these individuals spend on non-tipped duties and the degree to which these non-tipped duties are related to the employees' tipped occupation are questions for another day." *Soto*, 2016 WL 4701444, at *8. So too in this case. The defendants' insistence that the plaintiffs must, at this stage, provide "details regarding when and for how long certain duties were performed," Def. Mem. 2, ECF No. 28, is misplaced. It goes beyond the minimal factual showing required and requires a level of detail that is not likely to be available to the plaintiffs before the class is identified and discovery is conducted. They estimate that 30-50% of their time was spent on untipped side work. Moreover, the record suggests that most of the side work was done before or after shifts, with servers arriving one hour before opening and staying an hour or more after closing. These expanded hours combined with the sheer volume of duties satisfies the modest showing that the side work could have routinely exceeded 20%.

Further, the plaintiffs' second type of evidence has been accepted as part of the modest showing required of plaintiffs at this stage. *See, e.g.*, *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 434 (S.D. Ill. 2012) ("Curless has attached the Great American Real Food–Fast Employee Handbook which discusses some of the work waitresses must do such as cleaning windows, vacuuming, etc."). Here, BWW materials corroborate the declarants' attestations that extensive non-tipped work was required of servers and bartenders, and the amount of non-tipped duties bolsters the claim that the duties exceeded 20% of the servers' and bartenders' work hours. See Pl. Ex. F-G, ECF No. 22-1.

The defendants' submission of 14 contradictory declarations does not persuade this Court that there is no common policy or practice as a matter of law. This is true even if the Court accepts for the sake of argument— against the plaintiffs' contention that the affidavits were likely coerced and should be disregarded—that the declarations were voluntarily given without fear of repercussions. The defendants' evidence is hardly overwhelming; although the total number of declarants is larger than plaintiffs,' not all of them attested to all of the same things. In most cases, only a couple of the declarants disavow a particular task that the BWW materials describe as part of the duties of a bartender or server. These declarants might be anomalous in their failure to perform certain duties.

In any event, at this stage, the defendants' own factual showing does not "displace the testimony of the . . . declarants who say otherwise." *Soto*, 2016 WL 4701444, at *8. This Court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant. *Bergman*, 949 F. Supp. 2d at 855–56; *Curless*, 280 F.R.D. at 433 ("At this stage, the Court does not resolve factual disputes, decide substantive issues going to the merits or make credibility determinations."). That comes later.

Therefore, the defendants are off-base in arguing that that the "weight of the evidence" shows that the amount of non-tipped work is not, by common practice or policy, in excess of 20 percent. Def. Mem. 9, ECF No. 28. Nor must the plaintiffs set forth in detail an "explanation of when, how frequently, or for how long those [non-tipped] tasks were performed" in light of the evidence the plaintiffs have presented about the sheer number of non-tipped duties they had. The defendants' reliance on *Langlands v. JK & T Wings, Inc*., No. 15-13551, 2016 WL 4073548 (E.D. Mich. Aug. 1, 2016), does not persuade the Court otherwise. That case was strictly a "dual jobs" claim, whereas here, the 20% claim is also at issue.[6] Furthermore, the *Langlands* Court weighed the defendant's evidence against the plaintiffs' in a manner that this Court does not find appropriate at this stage of the case. *See, e.g.,* 2016 WL 4073548, at *4 ("Plaintiffs do not rebut this evidence."). Therefore, the defendants' sole authority for denying conditional certification on the 20% claim is not persuasive.

Further, the defendants' argument that the plaintiffs fail to make a modest showing of a "common policy or practice of excessive side work (over 20%)" because the side work checklists are insufficient evidence fails. Def. Mem. 11, ECF No. 28. Again, the defendants hold the plaintiffs to an evidentiary burden that is too high; it argues "there is no evidence that opening servers actually followed this schedule." *Id*. at 13. Aside from the oddity of the employer suggesting that its published instructions were routinely ignored, the defendants again misapprehend the plaintiffs' burden at step one to simply make a plausible showing that a

---

[6] Respectfully, the *Langlands* Court did not appear to appreciate the distinction between the two kinds of claims. It applied the 20% threshold to the dual-jobs claim, 2016 WL 4073548, at *3 ("Under a dual jobs analysis, servers may perform side work as long as it is not a substantial amount in excess of twenty percent"); this, however, is inconsistent with the law as interpreted by the Labor Department. Even if an employee does not have a dual job, she must be compensated the minimum wage for hours worked on non-tipped tasks if those related tasks exceed 20% of her time on the job.

common policy or practice of requiring excessive side work exists among the defendants' BWW stores. Courts in this District have previously rejected similar arguments that collective actions should not be conditionally certified because they "may later require a more individualized inquiry." *Ballou*, 2013 WL 3944193, at *5 (N.D. Ill. July 31, 2013) (collecting cases). The plaintiffs have met their burden.

### B.    Dual Jobs

The plaintiffs' dual-job theory of relief under the FLSA is a closer case; to establish this kind of violation they must show that they are required to perform tasks that are not "related" to being a server, no matter how much or little time they spent on it (unless *de minimis*). The defendants argue that the dual-job regulation does not apply to the plaintiffs because they describe "many" non-tipped duties that are "related" to their work as servers and bartenders, and thus not subject to the minimum wage (unless they are excessive). Def. Mem. 5-6, ECF No. 28. The defendants say that only cleaning bathrooms is "arguably outside their tipped occupations" and that many servers and bartenders (its declarants) never cleaned bathrooms. *Id*. at 7.

The language of the dual-jobs regulation puts something of a damper on the plaintiffs' claim under the dual-jobs regulation of the FLSA. The duties that the plaintiffs' declarants describe can be generally categorized as setting up their respective areas of the restaurant, keeping required items—napkins, silverware, glassware, condiments—prepared for customer use, keeping their services areas orderly and clean, and opening and closing up the restaurant. These duties are more extensive, but not drastically different in kind, from the regulation's example of a server "who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," or the examples given in *Schaefer Brother*s of "related" work. *See* 29 C.F.R. § 531.56(e); 829 F.3d at 555.

On the other hand, the FOH makes clear that janitorial tasks are not part of a server's occupation. Section § 30d000(f)(4) states that a server who does "maintenance work" such as "cleaning bathrooms and washing windows" is engaged in a dual job because those duties "are not related to the tipped occupation of a server." In this case, the plaintiffs and the other declarants set forth several deep-cleaning duties, in addition to cleaning bathrooms, that they were required to perform. Tending to video games, washing and dusting walls, scraping gum from the floor, and "deck-scrubbing," for example, are farther afield from what a server or bartender might ordinarily be expected to do, and are akin to the examples of maintenance work in the FOH. It could be argued that keeping the dining and bar areas pristine is "related" to serving food and drink to customers, but there is a qualitative difference between tidying up and deep cleaning. (Whether the BWW stores even employ janitorial or maintenance staff is unclear, but the answer could be telling. The record shows that cleaning bathrooms is now the province of the cashiers.) And cleaning the bathrooms is a duty that can hardly be said to be "related" in kind to food and drink service—as even the defendants acknowledge. The domain of servers and the bartenders is the dining and bar area; their occupations are not typically performed in restrooms. Therefore, at least some of the tasks assigned to servers and bartenders are consistent with "maintenance" work, in the language of the FOH, rather than serving food and making drinks. Provided that these duties were not "negligible" within the meaning of *Schaefer Brothers* (which does not explain the term), the plaintiffs would be entitled to the minimum wage during the time spent on "maintenance" tasks. There are enough such tasks listed on the BWW checklists and described by the plaintiffs' declarants to make a modest showing that the defendants' BWW franchises had a common policy or practice or requiring bartenders and servers to perform maintenance or janitorial duties that are not related to their occupations.

### C. Tip Confiscation Theory

Finally, there is the question whether the plaintiffs have made the required showing of a common practice for reimbursements for shortages and walkouts. Here, this Court must agree with the defendants that the plaintiffs' evidence is weak. Grosscup attested to three instances of reimbursing the restaurant for walkouts in three years; only one other declarant, Jerome Frederick, ever had that experience, and that was one time. These instances could easily be outliers or the product of unknowing or idiosyncratic supervisors. Similarly, Grosscup's vague reference to the "several" times she had to supply the register with cash is shared only by Rojas, who put money in the cash drawer "two times" in three years. There is no manual or handbook supporting the claim of a common policy or practice in the defendants' BWW franchises of requiring workers to use tips to pay for walkouts or cash shortages, nor is there a declaration from any manager that this was something typically required of servers or bartenders. The isolated incidents described in the declarations, without the corroboration of some kind, are very paltry evidence of a common policy.

In response, Grosscup argues that conditional certification is not granted on a claim-by-claim basis. Under § 216(b), the opt-in plaintiffs become parties to "the action." *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). As long as the opt-in plaintiffs' notice forms are worded broadly enough to encapsulate a particular theory of the case, it is part of the "action." *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1018 (11th Cir. 2007). If a motion to dismiss were granted as to some claim (or more accurately, some theory of relief under the FLSA), that claim would not be part of "the action" for the named plaintiffs or the opt-in plaintiffs.

Grosscup stretches these Eleventh Circuit cases too far. She has asserted three separate FLSA violations; each is necessarily based on a distinct alleged common policy of the defendants. Therefore, she must make the initial showing of a common policy for each claimed violation of the FLSA. Otherwise, any unsubstantiated alleged common policy could be included in the proposed collective action based on the factual predicate for a different one entirely. In this case, the tip retention claim would survive because it is part of an "action" in which the plaintiffs made the initial showing of a policy of requiring excessive side work and a policy of underpaying for time spent on unrelated work. Those policies have nothing to do with tip confiscation, as to which the plaintiffs has not made a sufficient showing of a common policy. The plaintiffs cannot seriously argue that she should be permitted to fish out evidence of such a policy *after* conditional certification; this turns the process on its head by eliminating the burden of making a modest showing of a common policy before issuing notice. Therefore, the "action" that this Court conditionally certifies will include the claims based upon a common policy of requiring excessive side work and a common policy of requiring unrelated work to be performed for tip-credited wages. Grosscup may individually pursue her allegations of tip confiscation, but they will not be part of the collective.

D.      **Manageability**

The defendants argue that a collective action should not be conditionally certified because it would be unmanageable—requiring fact-intensive inquiries and individualized defenses that would necessitate "hundreds of min-trials." Def. Mem. 14, ECF No. 28. The defendants contend: "Determining which servers and bartenders spend more than 20% of their time on side work, and in what work weeks, is a nearly impossible venture that would require

individualized testimony." *Id*. at 15. The plaintiffs counters that these concerns are "premature" and "overblown." Pl. Reply 11, ECF No. 30.

Although there might well be genuine difficulties with managing a collective action that will entail discerning how much time individual bartenders and servers spent on related side work to determine whether it exceeded 20%, the Court agrees that it is premature to conclude at this time that such an action is *per se* unmanageable. (The defendants' objection pertains only to the 20% rule; it will presumably be much easier for the plaintiffs to determine which employees did any amount of unrelated work.) As noted, many other courts have seen fit to grant preliminary certification in very similar cases. The next step of the certification process is to evaluate whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Sylvester* 2013 WL 5433593, at *3. The defendants' cursory argument does not explain why this determination of "sufficient similarity" would require an unmanageable number of mini-trials.

Further, when a common policy is alleged, certification, at least initially, can produce greater efficiency. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015). If this Court determined on the merits that none of the alleged policies of the defendants exist, "then all of the class members' claims would fail in unison." *Id*. There would be no need to explore the individualized issues that arguably impede manageability.

Finally, though the defendants argue otherwise, the detailed parsing of which hours were worked by whom and how much of that time was spent on related versus unrelated work is most relevant to damages, and it might well be unworkable to calculate the damages in a mechanical or formulaic way. *See, e.g*., *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (decertification of FLSA class appropriate where competent representative evidence of

damages was not proposed and "2341 separate hearings loomed"). But that is looking too far ahead; at present, there is not even a sense of how many plaintiffs might opt in and how the plaintiffs will establish that the opt-in participants are in fact similarly situated to Grosscup. The issue of manageability is, as Grosscup argues, raised prematurely.

### E. Form of Notice

The plaintiffs' proposed notice form, ECF No. 22-1 at Ex. I, states: "The lawsuit claims that the Company violated federal and Illinois minimum wage law by paying servers and bartenders less than the hourly minimum wage while requiring them (1) to perform improper types, and excessive amounts, of non-tipped work, and (2) to reimburse the Company from their tips for customer walkouts and cash drawer shortages." The Court notes two initial issues with the proposed notice. First, characterization of work unrelated to non-tipped work as "improper" is misleadingly pejorative. There is nothing *per se* improper about imposing additional duties on servers and bartenders; the issue is whether that work is unrelated to their tipped duties and/or whether, unrelated or not, they spend excessive time performing it. Second, because there has not been a sufficient preliminary showing of any policy requiring reimbursements from workers' tips, that claim cannot be included in the notice. (As already noted at note 4, *supra*, the plaintiffs have not supported any claim for failure to notify, and therefore that claim must also be omitted from the notice.)

The defendants also suggest a handful of changes to the notice. Defs. Mem. 15-16, ECF No. 28. One is an objection to the use of email to deliver the forms. But this Court agrees with the many others that have concluded that because communication by email is "the norm," notice by email is appropriate and enhances the chance that the potential opt-in plaintiffs receive the notice. *Gonzalez v. J. Salerno & Son, Inc.*, No. 16-CV-5120, 2017 WL 2193248, at *6 (N.D. Ill.

May 18, 2017); *Pieksma v. Bridgeview Bank Mortg. Co.*, LLC, No. 15 C 7312, 2016 WL 7409909, at *6 (N.D. Ill. Dec. 22, 2016); *Watson v. Jimmy John's, LLC*, No. 15 C 6010, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016); *but see Petersen v. Marsh USA, Inc*., No. 10 C 1506, 2010 WL 5423734, at *6 (N.D. Ill. Dec. 23, 2010) (email notice rejected "in the interest of promoting effective notice"). The defendants' other objections and suggestions do not strike this Court as unreasonable, although it makes no ruling at this time. The parties should first confer about revising the notice and consent forms in keeping with this ruling. If agreement cannot be reached, then the Court will rule on whatever objections remain.

*     *     *     *     *

Grosscup's motion for certification and step-one notice is granted, and this action is conditionally certified as a collective FLSA action, except as to the allegations of a common policy of confiscating tips for improper purposes and failing to provide notice of the tip-credit rules. A status hearing is set for June 21, 2017, at 9:00 a.m., before which time the parties shall confer and file either agreed forms of notice and consent or their competing versions. (The defendants' participation in this process will not be construed as acquiescence to the conditional certification.)

Date: June 7, 2017

John J. Tharp, Jr.
United States District Judge